Opinion
Pogue, Judge:
Plaintiffs, domestic parties in interest, have invoked this Court’s jurisdiction under 28 U.S.C. § 1581 (b), challenging a decision of the United States Customs Service[1] which denied plaintiffs’ petition filed pursuant to section 516 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516 (1994). The action involves the proper classification of non-rigid plastic flat goods within subheading 4202.32 of the Harmo *1050 nized Tariff Schedule of the United States (“HTSUS”). The provisions under consideration are as follows:
4202 Trunks, suitcases, vanity cases, attache cases, briefcases, school satchels, spectacle cases, binocular cases, camera cases, musical instrument cases, gun cases, holsters and similar containers; traveling bags, toiletry bags, knapsacks and backpacks, handbags, shopping bags, wallets, purses, map cases, cigarette cases, tobacco pouches, tool bags, sports bags, bottle cases, jewelry boxes, powder cases, cutlery cases and similar containers, of leather or of composition leather, of sheeting of plastics, of textile materials, of vulcanized fiber, or of paperboard, or wholly or mainly covered with such materials or with paper:
* % % * * #
* *
Articles of a kind normally carried in the pocket or in the handbag:
4202.32 With outer surface of sheeting of plastic or of textile materials:
With outer surface of sheeting of plastic:
4202.32.10 Of reinforced or laminated plastics . 12.10/kg + 4.6%
4202.32.20 Other. 20%
Customs’ classification is before the Court for de novo review pursuant to 28 U.S.C. § 2640(a)(1994) on the summary judgment motions of the plaintiffs and defendant. The consignee in interest, Colony One Trading Corporation, submitted a brief in support of defendant’s motion. The Court also received several briefs amici curiae in support of defendant’s motion.[2] The issue in the case is the meaning of the phrase “of reinforced or laminated plastics” in HTSUS subheading 4202.32.10.
Undisputed Facts
The merchandise at issue consists of a change purse made of non-rigid plastic with an outer surface of plastic sheeting backed by a textile material that provides support. The textile fabric has been joined to the plastic sheeting by heat and pressure. There is no dispute that the merchandise in question is classifiable under the six-digit subheading 4202.32 HTSUS.[3]
*1051 Background
Prior to the conversion to the HTSUS in 1989, the tariff term “Of reinforced or laminated plastics” was defined in the predecessor TSUS to include a requirement of rigidity:
(i) rigid, infusible, insoluble plastics formed by the application of heat and high pressure on two or more superimposed layers of fibrous sheet material which has been impregnated or coated with plastics, or
(ii) rigid plastics comprised of imbedded fibrous reinforcing material (such as paper, fabric, asbestos, and fibrous glass) impregnated, coated or combined with plastics usually by the application of heat or heat and low pressure.
Schedule 7, Part 12, Subpart A, Headnote 2, TSUS (emphasis added).[4] The definition set forth in the TSUS was not included in the HTSUS. The HTSUS has no parallel or like definition of the tariff term “of reinforced or laminated plastics.”
When first considering classification under subheading 4202.32 HTSUS, Customs applied the TSUS definition requiring rigidity to the term “of reinforced or laminated plastics;” Customs classified non-rigid plastic “flat goods” under subheading 4202.32.20 HTSUS (“other”) which carries a 20% ad valorem rate. See Headquarters Ruling Letters HQ 083415 (May 18, 1989), HQ 084929 (Aug. 22, 1989), HQ 087210 (May 10,1991). In 1991 Customs reconsidered its classification of nonrigid plastic flat goods under the HTSUS and began classifying those items under the lower tariff rate provision 4202.32.10 HTSUS covering “reinforced or laminated” plastic flat goods. See Liz Claiborne v. United States, Consolidated Court No. 89-10-00562, (CIT April 11, 1991)(stip-ulated judgment on agreed statement of facts).[5] In so doing Customs abandoned the old TSUS definition requiring rigidity. Plaintiffs, domestic manufacturers of non-rigid flat goods, commenced this action to challenge the lower tariff rate classification and consequent weakening of protection for the domestic industry. Plaintiffs argue that the term “of reinforced or laminated plastics” should be narrowly defined and require rigidity like its statutory definition in the predecessor TSUS. *1052 The defendant and the party in interest argue for a construction of the phrase “reinforced or laminated plastics” in accord with its clear and unambiguous common meaning which encompasses the goods in question.
Discussion
Rule 56 of this court permits summary judgment when “there is no genuine issue as to any material fact * * USCIT R. 56(d). Customs’ classification is before this court for de novo review pursuant to 28 U.S.C. § 2640(a)(2) (1994). The court makes “its determinations upon the basis of the record made before the court.” Id. In addition, the legislative mandate specifically directs the court to determine the correct classification for the merchandise involved. 28 U.S.C. § 2643(b) (1994). In establishing the classification, the court must consider “whether the government’s classification is correct, both independently and in comparison with the importer’s alternative.” Jarvis Clark Co. v. United States, 2 Fed. Cir. (T) 70, 75, reh’g denied, 2 Fed. Cir. (T) 97 (1984).
“The ultimate issue as to whether particular imported merchandise has been classified under an appropriate tariff provision * * * entails a two step process: (1) ascertaining the proper meaning of specific terms in the tariff provision; and (2) determining whether the merchandise at issue comes within the description of such terms as properly construed. ” Sports Graphics, Inc. v. United States, 24 F.3d 1390, 1391 (1994). The first step is a question of law; the second, a question of fact. E.M. Chem. v. United States, 9 Fed. Cir. (T) 33, 35 (1990); see also, Medline Indus., Inc. v. United States, 62 F.3d 1407, 1409 (Fed. Cir. 1995). In the present case, the only issue in controversy is the meaning and scope of the tariff term “of reinforced or laminated plastics” — a question of law. See United States v. Florea & Co., Inc., 25 CCPA 292, 296 (1938). Accordingly, summary judgment is appropriate.[6]
Rule 1 of the General Rules of Interpretation of the Harmonized Tariff Schedule provides that “classification shall be determined according to the terms of the headings and any relative section or chapter notes.” Gen. R. Interp. 1, HTSUS. When a tariff term is not specifically defined in the HTSUS and its intended meaning is not indicated in its legislative history, the term is to be construed in accordance with its common and popular meaning. E.M. Chemicals v. United States, 9 Fed. Cir. (T) 33, 37 (1990). In ascertaining common meaning, the court may rely on its own understanding of the term used, and may consult dictionaries, scientific authorities, and other reliable sources of information. Brookside Veneers, Ltd. v. United States, 6 Fed. Cir. (T) 121, 125, cert. denied, 488 U.S. 943 (1988).
The HTSUS does not define the terms “reinforced,” “laminated,” “reinforced plastic,” or “laminated plastic.” These terms are, however, *1053 defined in various dictionaries, and “rigidity” is not included among the definitions. Webster’s Third New International Dictionary of the English Language 1915 (1993) defines “reinforce” as “to strengthen with additional force, assistance, material or support: make stronger or more pronounced.” The American Heritage Dictionary of the English Language 1522 (3d ed. 1992) defines it as “to strengthen by adding extra support or material.” The Oxford English Dictionary (2d ed. 1989) defines “reinforced plastic” as “plastic strengthened by the inclusion of a layer of fibre (esp. glass).” Webster’s Third New International Dictionary of the English Language 1267 (1993) defines “laminated plastic” as “a plastic made of superposed layers of paper, wood, or fabric bonded or impregnated with resin and compressed under heat.” The American Heritage Dictionary of the English Language 1010 (3d ed. 1992) defines “laminated” as “composed of layers bonded together. ” See also American Hardboard Ass ’n v. United States, 12 CIT 714, 719 (1988); Richard Crittall Radiant Heating Corp. v. United States, 27 Cust. Ct. 193, 195, C.D. 1369 (1951).
Similarly, within the flat goods industry the listed terms do not have a rigidity requirement.[7] The industry meanings of the words “reinforced or laminated plastics” are substantially the same as the dictionary definitions, and those meanings do not limit the scope of the tariff term to “rigid” merchandise. Guided by the rule that “[ajbsent clear legislative intent to the contrary, the plain meaning of the statute will prevail,” Lynteq, Inc. v. United States, 976 F.2d 693, 696 (Fed. Cir. 1992) (quoting United States v. Turkette, 452 U.S. 576, 580 (1981) and Consumer Prod. Safety Comm’n v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980)), the Court must conclude that the non-rigid flat goods in question are covered by the tariff provision for “reinforced or laminated plastics” and that Customs’ classification is correct.
Plaintiffs claim that a competing interpretation of the tariff term based on its prior TSUS definition requiring rigidity renders the phrase ambiguous. Plaintiffs contend that the TSUS definition was an inseparable term of art that was read as a whole to require rigidity and that the phrase was not parsed into the two concepts “reinforced plastics” or “laminated plastics.” Plaintiffs further argue that legislative history and certain extrinsic aids of statutory construction manifest clear Congressional intent to continue application of this TSUS definition. Specifically, plaintiffs rely on a Trade Policy Staff Committee (TPSC) paper from the Office of the United States Trade Representative on the Har *1054 monized System Conversion. Plaintiffs also rely on the tariff conversion schedules and the concept of tariff neutrality. The Court is not persuaded by these arguments.
First, the Court is not convinced that the TSUS definition of the phrase of “reinforced or laminated plastics” was an inseparable statutory term of art. Instead, the TSUS separately defined “reinforced plastics” in headnote 2(ii), and “laminated plastics” in headnote 2(i),[8] undercutting Plaintiffs’ “term of art” argument.
Second, where the statutory language of the HTSUS is clear, resort to the TSUS is not necessary, Pima Western, Inc. v. United States, 915 F.Supp. 399, 404-405 (1996); if the HTSUS term is clear, e.g., the common and commercial meaning of a term are the same and alternate meanings are not apparent from the context of the statute,[9] the existence of a prior statutory definition in the TSUS does not create an ambiguity in the HTSUS. Here, the provision in the HTSUS leads to a clear outcome through application of the term’s plain, ordinary, and popular meaning which is consistent with its commercial meaning.
Third, if anything is to be gleaned about legislative intent from the old TSUS definition, it is that the omission of this long standing definition upon conversion to the HTSUS was deliberate. As stated in Bentkamp v. United States, 40 CCPA 70 (1952):
Ordinarily, where the essential word that supports a construction contended for appeared in an earlier act and has been omitted in a subsequent one by Congress, the omitted word may not be restored in the terms of the law by judicial construction. United States v. Marsching, 1 Ct. Cust. Appls. 216, [218 (1911)]. Such a change of legislative language is presumed to evidence an intent on the part of Congress to effect a change in meaning. United States v. Post Fish Co., 13 Ct. Cust. Appls. 155, [158 (1925)].
Id. at 77. The omission of a long-standing statutory definition represents a significant change in statutory language. Id. Not only was an express statutory definition omitted, but a new subheading “With outer surface of sheeting of plastic” was added to chapter 4202.32, HTSUS. Moreover, the phrase “of reinforced or laminated plastics” appears in several provisions in the HTSUS,[10] all of which had comparable provisions in the TSUS, making it unlikely that Congress forgot through inadvertence or otherwise to include a definition applicable to multiple provisions upon conversion. See Magnesium Elektron v. United States, 50 Cust. Ct. 71, 73 C.D. 2391 (1963). The omission, therefore, appears to have been intentional.
*1055 Plaintiffs rely on Lonza, Inc. v. United States, 849 F. Supp. 51 (1994), aff’d, 46 F.3d 1098 (Fed. Cir. 1995), to support the proposition that an omitted TSUS definition survives under the HTSUS unless there is clear evidence of legislative intent to embrace an alternative definition. This Court does not read Lonza as abrogating the canon that a change of statutory language is presumed to evidence a change of legislative intent. In Lonza, the TSUS definition of the term “drugs” was omitted from the HTSUS. Unlike this case, however, in Lonza the common and commercial meanings of the term “drugs” were the same as the TSUS definition, leading the Lonza court to conclude that the TSUS definition survived under the HTSUS. Id at 59. Given the similarity between the common and commercial meanings, and the long-standing TSUS definition, the Lonza court stated that it would require clear evidence of legislative intent to embrace a different construction of the term “drugs. ” Id. This articulation, however, was specific to the case at hand and was not aimed at abrogating a canon of statutory construction.
In this case the common meaning of the term “of reinforced or laminated plastics” is different from its prior TSUS definition. For the TSUS definition to survive in this instance, there would have to be clear evidence of legislative intent to continue application of the omitted definition. To require otherwise would reject the traditional rule of tariff interpretation that a statutorily undefined term’s common meaning is its correct meaning.
Plaintiffs’ contention that legislative history and extrinsic aids of statutory construction demonstrate a clear legislative intent to continue the TSUS definition is unpersuasive. Plaintiff relies on a Trade Policy Staff Committee (TPSC) paper from the Office of the United States Trade Representaive on the Harmonized System Conversion. Buried in a discussion of the Israeli Free Trade Area is the statement: “* * * the TPSC Subcommitte on Israel, with advice from the Task Force, reviewed the conversion [to the Harmonized System] and identified the most sensitive areas in which breakouts would be needed to continue treatment agreed to under the FTA.” The “breakouts” list proposed HTSUS subheadings 4202.32.10 and 4202.32.20. From this document Plaintiff concludes that Congress intended to continue the TSUS definition for “reinforced or laminated plastics” under the HTSUS. This conclusion is based on the inference that “continuefd] treatment” under HTSUS subheadings 4202.32.10 and 4202.32.20 necessarily requires application of the TSUS definition for “reinforced or laminated plastics.”
The Court does not agree that the reference in the TPSC document indicates a clear legislative intent to continue the TSUS definition under the HTSUS. The TPSC paper does not mention the TSUS definition for “reinforced or laminated plastics,” and the definition’s continued application under the HTSUS is not specifically addressed. This lack of precision limits the document’s persuasive weight. Without such *1056 precision, the Court cannot read a definition into the HTSUS that has been expressly omitted. Bentkamp, 40 CCPA at 77.
Plaintiffs’ reliance on the tariff conversion schedules and the concept of tariff neutrality is also unpersuasive. Plaintiffs argue that the concept of tariff neutrality and the TSUS\HTSUS Conversion tables set forth in the Continuity of Import and Export Trade Statistics After Implementation of the Harmonized Commodity Description and Coding System, USITC Pub. 2051 (Jan. 1988), which cross-references items under the TSUS with subheadings under the HTSUS, support its contention that Congress intended to continue application of the TSUS definition. Under the table, subheading 4202.32.10, HTSUS, is dutiable at the same rate previously applicable to TSUS item 706.42 (which provided for flat goods of reinforced or laminated plastics), and subheading 4202.32.20 (“other” than reinforced or laminated) is dutiable at the same rate previously applicable to TSUS item 706.61. Plaintiff claims that this demonstrates an intent that subheading 4202.32.10 be restricted to flat goods with an external surface of “rigid” plastic sheeting.
This Court in SGI, Inc. v. United States, 927 F.Supp. 463 (1996), appeal docketed, 96-1272 (March 21, 1996), considered the persuasive weight the Court should give the Conversion Tables in construing terms under the HTSUS, and concluded that, “although a relevant guide to the Court’s inquiry, the [Tables are] not entitled to great weight; ‘the conversion cross-reference must in all cases be approached cautiously as a guide to the scope of the HTSUS provisions,’ and ‘are not intended, nor should they be viewed as a substitute for, the traditional tariff classification process’” Id. at 30-31 (quoting Marubeni Am. Corp. v. United States, 905 F. Supp. 1101, 1110-1111 (1995) (emphasis added). Here the statute has changed: a definition has been omitted and a new subheading has been added. Interpretation of the phrase according to its common and popular meaning leads to a clear, unambiguous result. The Conversion Tables cannot alter this consequence of traditional interpretation of a statutorily undefined tariff term. See Marubeni Am. Corp. v. United States, 905 F. Supp. 1101, 1111; Lonza Inc. v. United States, 849 F. Supp. 51, 61 (1994), aff'd, 46 F.3d 1098 (Fed. Cir. 1995).
The Court believes that if Congress intended to distinguish between “rigid” or “non-rigid” plastics at the eight digit level in Chapter 42, Congress would have inserted those words directly in the statute, as it did in section 4202.12.20[11] and in various provisions of Chapter 39 that explicitly require rigidity or flexibility. See, e.g., HTSUS 3920.41.00; 3920.42; 3920.51.10; 3920.63.10; and 3921.90.40.
Conclusion
The distinction between HTSUS subheadings 4202.32:10 and 4202.32.20 does not depend upon the “rigidity” of the plastics, but on *1057 whether the plastics have been reinforced or laminated with other materials; those reinforced or laminated are covered by subheading 4202.32.10, HTSUS, and those that are not are covered by subheading 4202.32.20, HTSUS.
Accordingly, Plaintiffs motion for summary judgment is denied, and defendant’s cross-motion for summary judgment is granted. Judgment shall be entered accordingly.

 T.D. 94-70, Cust. B. & Dec. No. 36 at 2 (1994).

 Liz Claiborne Accessories, Inc., Louis Vuitton Hawaii, Inc., and Louis Vuitton N.A., Inc. filed an amicus brief in support of defendant’s cross motion for summary judgment and in opposition to plaintiff’s motion for summary judgment. Cartref, Ltd. d/b/a MCM filed a separate amicus brief in support of defendant’s cross motion and in opposition to plaintiff’s motion.

 Additional U.S. Note 2 to Chapter 42 states: “articles of textile fabric impregnated, coated, covered or laminated with plastics (whether compact or cellular) shall be regarded as having an outer surface of textile material or of plastic sheeting, depending upon whether and the extent to which the textile constituent or the plastic constituent makes up the exterior surface of the article.”

 The TSUS provision governing flat goods provided:
(c) the term “flat goods” covers small flatwares designed to be carried on the person, such as banknote cases, bill cases, billfolds, bill purses, bill rolls, card cases, change purses, cigarette cases, coin purses, coin holders, compacts, currency cases, key cases, letter cases, license cases, money cases, pass cases, passport cases, powder cases, spectacle cases; stamp cases, vanity cases, tobacco pouches, and similar articles.
Luggage and handbags, whether or not fitted with bottle, dining, drinking, manicure, sewing, traveling, or similar sets; and flat goods:
Of reinforced or laminated plastics:
706.42 Flat Goods.6.1(8 per lb.+5.1% ad val.
706.43 Other.6.10 per lb.+5.1% ad val.
Of other material:
Other:
706.61 Flat goods.20% ad val.
706.62 Other.20% ad val.
Schedule 7, Part 1, Subpart D, TSUS.

 Customs subsequently modified its earlier rulings: Headquarters Ruling Letter HQ 951905 (January 6,1993) modified HQ 084929; Headquarters Ruling Letter HQ 953130 (January 6, 1993) modified HQ 087210.

 In interpreting the meaning of a tariff term under the HTSUS, the court does not apply the two-step analysis of Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43 (1984). See Anval Nyby Powder AB v. United States, 927 F. Supp 463, 467-469 (1996), appeal docketed, No. 96-1438 (Fed. Cir. July 5, 1996).

 Steven M. Hurwitz Aff. ¶¶ 7 filed as Exhibit 3 in Defendant’s Cross-Motion for Summary Judgment (“reinforced plastics” refers to “plastics material which has been attached to or combined with another material such as fabric backing to give the plastic sheeting added strength and retard tearing.”) Charles Hora Aff. ¶¶ 11,15, filed as Exhibit 4 in Defendant’s Cross-Motion for Summary Judgment (“reinforced plastics” refers to “a plastic sheeting reinforced with some type of material, generally a fabric, to improve the physical properties of the plastic and thereby provide strength and avoid tearing or any other damage to the goods”; “laminated plastics” refers to “a material consisting of layers of plastic sheeting and textile material which are joined under heat and pressure.”); Jean Pierre Colomb Aff. ¶ 8, filed as Exhibit 5 in Defendant’s Cross-Motion for Summary Judgment. Stephane Sandillon Aff. ¶¶ 5,6, filed as Exhibit 6 in Defendant’s Cross-Motion for Summary Judgment. Michael Vogel Aff. ¶ 5, filed as Exhibit 7 in Defendant’s Cross-Motion for Summary Judgment.

 See definition set forth in the text supra.

 “It is well settled that ‘ambiguity is a creature not of definitional possibilities but of statutory context.’ When engaging in statutory construction, the court must look to the entire context of the relevant section of the statute and not merely to the individual word.” Marcor Development Corp. v United States, 926 F.Supp. 1124, 1129 (1996) (quoting Brown v. Gardner, 115 S.Ct. 552, 555 (1994)) (additional citations omitted).

 6506.10.30, HTSUS (“Other headgear, whether or not lined or trimmed: Safety headgear: Of reinforced or laminated plastics.”); 9401.80.20, HTSUS (“Other seats: Of rubber or plastics: Of reinforced or laminated plastics"); 9403.70.40, HTSUS (“Other furniture and parts thereof: Furniture of plastics: Of reinforced or laminated plastics").

 4202.12.20, HTSUS, provides two categories under the subheading “with outer surface of plastics:’’ the first is “Structured, rigid on all sides” and the second is “Other." (Emphasis added).